Robert S. Robinson (SBN 131461)
Law Office of Robert S. Robinson
Bishop Ranch 6
2440 Camino Ramon, Suite 253
San Ramon, CA 94583
(925) 830-2702
(925) 830-2104 fax

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE aka<br>IP Address 50.185.132.166<br><br>            Plaintiff,<br><br>vs.<br><br>Comcast Corporation, a Pennsylvania Corporation<br><br>            Defendant | Case No.:<br><br>**COMPLAINT FOR:<br>DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      Defendant Comcast is subject to the Cable Communications Policy Act, 47 U.S.C. § 551 *et seq.* ("CCPA" or "Act"), which requires cable operators to maintain the privacy of the subscriber's personally identifiable information (PII) and take necessary steps to prevent access thereto, subject to a valid court order "authorizing such disclosure." Plaintiff is a Comcast subscriber whose PII is under imminent threat of being disclosed without any valid requisite court order authorizing Comcast to release plaintiff's PII. Thus far Comcast has acted to protect

COMPLAINT - 1

plaintiff's PII, but there are two subpoenas issued by a California attorney directing Comcast to turn over plaintiff's PII. (The subpoenas were issued in San Francisco Superior Court, Case No. CGC-16-549755, "Rosebank Road Medical Services Ltd. etc., et al., vs. Ramji Govindarajan, etc." and are hereby referred to as the "Rosebank case subpoenas.") Plaintiff attempted to appear in California Superior Court anonymously to quash the Rosebank case subpoenas, but the Superior Court refused to allow plaintiff to appear anonymously and thus blocked plaintiff from even making a motion to quash in state court. And without anonymity, bringing a motion to protect anonymity would be meaningless.

2. Plaintiff is informed and believes and thereupon asserts that Comcast may honor the Rosebank case subpoenas even though doing so would violate the CCPA. Accordingly, there is an actual controversy between the parties about their respective rights and duties under the CCPA concerning the subject subpoenas. Should Comcast honor the subpoenas without an order from this Court so authorizing it, Plaintiff will be irreparably damaged.

3. Accordingly, Plaintiff asserts claims for declaratory and injunctive relief enjoining Comcast from honoring the defective subpoenas or otherwise violating the CCPA.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, in particular, the Cable Communications Policy Act, 47 U.S.C. § 551 *et seq.* ("CCPA" or "Act").

5. This Court has personal jurisdiction over Defendant because it transacts business in this judicial district in California by, *inter alia*, entering into contracts with customers in this district and providing cable, television, telephone, and Internet services in this district. Because Comcast maintains a presence in this State, this Court has personal jurisdiction over it.

6. Venue is proper in this District, pursuant to 28 U.S.C. §1391(b)(1), because Comcast resides in this District. As a corporation, Comcast's residency is based on it being subject to personal jurisdiction in this District. This District has general personal jurisdiction over it because it maintains continuous and systematic contacts in this District through its contracts and

COMPLAINT - 2

business activities, as stated above. Venue is further proper in this District, pursuant to §1391(b)(2), because Comcast provided the services giving rise to the claim in this District.

## PARTIES

6. Plaintiff is a natural person currently domiciled in this district and appears as John Roe to protect the anonymity provided under, and which is at the heart of, the CCPA.

7. Comcast is a corporation that provides cable, cable, television, telephone, and Internet services in this district.

## FACTUAL BACKGROUND

8. On October 30, 1984, Congress passed the CCPA in order to promote competition among providers of cable services and establish a national policy concerning cable communications and their operators. An important objective of Congress in establishing such a policy was to protect cable subscribers' sensitive personal information from misuse and improper disclosure. To that end, Congress made sure that the Act incorporated privacy guidelines jointly established several years earlier by the 34 nations comprising the Organization for Economic Cooperation and Development.

9. When the CCPA was under debate, legislative leaders noted that both common-sense privacy concerns and the constitutional rights of citizens were at stake:

> Cable systems, particularly those with a 'two-way' capability, have an enormous capacity to collect and store personally identifiable information about each cable subscriber. Subscriber records from interactive systems can reveal details about bank transactions, shopping habits, political contributions, viewing habits and other significant personal decisions. It is [therefore] important that national cable legislation establish a policy to protect the privacy of cable subscribers. A national policy is needed because, while some franchise agreements restrict the cable operator's use of such information, privacy issues raise a number of federal concerns, including protection of the subscribers' first, fourth, and fifth amendment rights. At the same time, such a policy must also recognize and unnecessarily or unreasonably impede those flows of

COMPLAINT - 3

information necessary to provide the service to the subscribers.

H.R. Rep. 98-934 at 4666-67 (1984).

10. These observations, now nearly 30 years old, are even more relevant today. Subscribers continue to disclose some of their most sensitive identifying information to their cable operator and Internet provider as a condition to entering into a contract for service.

11. Accordingly, the CCPA affords consumers significant protection with respect to the collection, maintenance, and disclosure of personally identifiable information ("PII") provided by the subscriber to the cable operator.

12. Under the CCPA, "personally identifiable information" is not specifically defined. Many federal courts have, however, concluded that it broadly encompasses "specific information about the subscriber, or a list of names and addresses on which the subscriber is included." *See, e.g.*, *Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 876, n.2 (10th Cir. 1992).

## COUNT I

## DECLARATORY AND INJUNCTIVE RELIEF

14. Defendant Comcast is a "cable operator" as defined by the CCPA. As noted above, Comcast has a statutory duty to protect plaintiff's PII. Plaintiff is informed and believes and thereupon asserts that Comcast may honor the above-described Rosebank case subpoenas even though doing so would violate the CCPA. Accordingly, there is an actual controversy between the parties about their respective rights and duties under the CCPA concerning the subject subpoenas, including, but not limited to, whether Comcast may honor the subject subpoenas. Plaintiff seeks a declaration from this court that were Comcast to honor the Rosebank case subpoenas, it would be violating its duties under the CCPA, and plaintiff seeks an injunction enjoining Comcast from honoring those defective subpoenas.

15. In addition, the CCPA provides a private right of action to consumers who have been aggrieved by a violation of 47 U.S.C. § 551. Specifically, any person aggrieved by any act of a cable operator violating 47 U.S.C. § 551 may recover "actual damages but not less than

COMPLAINT - 4

liquidated damages computed at the rate of $100 a day for each day of violation or $1,000.00, whichever is higher." 47 U.S.C. §551(f)(2)(A). Punitive damages and attorney fees are also allowed. Should Comcast honor the subpoenas without authority from this court, it will be in violation of the CCPA and plaintiff will be damaged and entitled to said remedies.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order:

A. Enjoining Comcast from releasing any information regarding the account holder for IP Address 50.185.132.166 pursuant to the Rosebank case subpoenas;

B. Granting such other and further relief as may be just and proper including remedies allowed by the CCPA; and

C. Declaring that this Court has the exclusive authority and jurisdiction to rule on the release of the PII of JOHN ROE.

Respectfully Submitted,

/s/ Robert S. Robinson
Robert S. Robinson (SBN 131461)
Attorney for Plaintiff
JOHN ROE aka IP Address 50.185.132.166

COMPLAINT - 5