UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JOHN ROE, | Case No. 17-cv-05966-LB |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |
| COMCAST CABLE COMMUNICATIONS, LLC, | Re: ECF No. 11 |
| Defendant. | |

**INTRODUCTION**

The plaintiff sues as a Roe plaintiff to enjoin Comcast from releasing any personally identifying information ("PII") about him as the account holder for IP address 50.185.132.166.[1] More immediately, he moves for a temporary restraining order ("TRO") to prevent Comcast from disclosing his PII in a state lawsuit brought by the intervenors in this case — Rosebank Road Medical Services and Geeta Murali Ganesh.[2] They sued fictitious defendants in state court for defamation for 22 reviews published anonymously on the website RateMDs.com and ultimately named Ramji Govindarajan as Doe 1 after they linked him through early discovery to IP addresses

---

[1] First Amended Compl. ("FAC") – ECF No. 6 at 5. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Memorandum – ECF No. 12.

ORDER – No. 17-cv-05966-LB

used to publish the 22 reviews.[3] The state court ordered disclosure of the Comcast PII because Mr. Govindarajan is linked to the IP address, which in turn is linked to another disparaging review.[4] The deadline for disclosure in state court is November 1, 2017, at 9:00 a.m.[5]

The federal Roe plaintiff moved for a temporary restraining order ("TRO") to enjoin Comcast's turning over his PII in state court.[6] The intervenors opposed the motion on the ground that the state-court decision precludes re-litigating the issue here.[7] The court denies the motion. The intervenors argue persuasively that the plaintiff is collaterally estopped from attacking the state court's order here.[8] The plaintiff has not made a clear showing that he is entitled to the extraordinary relief of a TRO. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

**OTHER RELEVANT CONTEXT**

The state lawsuit is in San Francisco Superior Court and is titled *Rosebank Road Med. Servs. Ltd. v. Ramji Govindarajan*, No. CGC-16-549755.[9] In the state lawsuit, the intervenors here — Rosebank Road Medical Services and Geeta Murali Ganesh — sued fictitious defendants for defamation.[10] They later amended to name Ramji Govindarajan as Doe 1.[11] The alleged defamation involves 22 reviews about Dr. Ganesh, who practices in New Zealand, that were published anonymously on the website RateMDs.com.[12] Early discovery linked Mr. Govindarajan to IP addresses used to publish the 22 reviews.[13] The Comcast IP address at issue here was used to

---

[3] *Id.* at 3–4.
[4] *Id.* at 5.
[5] *Id.* at 6.
[6] Application for TRO – ECF No. 11.
[7] Intervenors' Opposition – ECF No. 14 at 2.
[8] *Id.*
[9] FAC – ECF No. 6 at 2 (¶ 2)
[10] Memorandum – ECF No. 12 at 3.
[11] *Id.*
[12] *Id.* at 4; Intervenors' State-Court Motion – ECF No. 11-1 at 3.
[13] Memorandum – ECF No. 12 at 4.

publish an additional review on the website. It states, "a quack will be better than this doctor's office."[14]

In April 2016, Mr. Govindarajan moved ex parte in state court to appear as John Doe and moved to quash subpoenas to Comcast and Google to prevent the disclosure of the PII.[15] Citing *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (2008), the state court found that the plaintiffs in the state lawsuit failed to show that the "posting . . . meets the standard in *Krinsky* . . . ," finding, in other words, that it was not defamatory.[16]

In June 2017, the state-court plaintiffs again sought access to the PII after they obtained new information linking Mr. Govindarajan to the Comcast IP address.[17] They argued that the review was defamatory because Mr. Govindarajan — who was previously married to Dr. Ganesh's daughter — never received medical services.[18] They also argued that the PII was "relevant [even if it was not defamatory] to whether he engaged in a pattern of publishing disparaging reviews about Plaintiffs and thus likely published the other 22 Reviews."[19]

The state court issued a trial subpoena to Comcast to produce the Roe plaintiff's PII related to the IP address 50.185.132.166: "the name, address, phone numbers, Media Access Control (MAC) address, and IP addresses used on dates and times other than the dates and times indicated above, email addresses, and user agents which are associated with the above IP address, for the dates and times indicated above."[20] The Roe plaintiff filed a motion to appear pseudonymously as "John Roe" and to quash the subpoena; the state court denied the motion to appear anonymously.[21] Comcast apparently did not oppose the subpoena.[22] The state court ordered the production of the

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Intervenors' State-Court Motion – ECF No. 11-1 at 2.

[18] *Id.* at 3–4.

[19] *Id.* at 3.

[20] Trial Subpoena, Ex. 5 – ECF No. 11-5.

[21] Memorandum – ECF No. 12 at 5.

[22] *Id.*

ORDER – No. 17-cv-05966-LB 3

1  PII by 9:00 a.m. on November 1, 2017.[23]

2  On October 31, 2017, the plaintiff filed a motion for a temporary restraining order ("TRO") to enjoin Comcast's turning over his PII in state court at 9:00 a.m. on November 1, 2017.[24] All parties — including the intervenors — consented to magistrate-judge jurisdiction.[25] The undersigned held a hearing on November 1, 2017, at 8:00 a.m.[26] At the hearing, the plaintiff's attorney said that his client is not Mr. Govindarajan.

**GOVERNING LAW**

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974). A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22. A temporary restraining order may be issued without providing the opposing party an opportunity to be heard only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

The standards for a temporary restraining order and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 22–24. The irreparable injury must be both likely and immediate. *Id.* at 20–21. "[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine*

---

[23] *Id.* at 12.

[24] Application for TRO – ECF No. 11.

[25] ECF Nos. 13, 16, 19.

[26] Minute Entry – ECF No. 20.

*Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Before *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) [ ] serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (citation omitted). In this continuum, "the greater the relative hardship to [a movant], the less probability of success must be shown." *Id.* After *Winter*, the Ninth Circuit held that although the Supreme Court invalidated the sliding scale approach, the "serious questions" prong of the sliding scale survived so long as the movant satisfied the other elements for preliminary relief. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Thus, a preliminary injunction may be appropriate when a movant raises "serious questions going to the merits" and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief also are satisfied. *Id.* at 1134–35.

## ANALYSIS

The plaintiff claims that the disclosure violates the Cable Communications Policy Act, 47 U.S.C. § 551 *et seq.* The Act contains privacy measures governing a cable company's use of the cable system to collect personally identifiable information ("PII"), and it permits cable subscribers to bring a civil action to enforce the privacy provisions. 47 U.S.C. §§ 421–561; *see Klimas v. Comcast Cable Comms., Inc.,* 465 F.3d 271, 275–76 (6th Cir. 2006). More specifically, 47 U.S.C. § 551(c) generally prohibits a cable operator's disclosure of a subscriber's PII without the subscriber's consent. But the cable operator may disclose the subscriber's name and address pursuant to a court order:

> (c) Disclosure of personally identifiable information
>
> . . . .
>
> (2) A cable operator may disclose such information if the disclosure is —
>
> . . . .
>
> (B) . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

ORDER – No. 17-cv-05966-LB 5

47 U.S.C. § 551(c)(2)(B). An aggrieved subscriber may file a civil action and claim actual or liquidated damages, punitive damages, and reasonable attorney's fees and litigation costs reasonably incurred. *Id.* § 551(f).

Here, the state court issued an order and — presumably insofar as Comcast is concerned — satisfied the statute's requirements. The plaintiff nonetheless argues that the state court erred by not permitting him to move to quash the subpoena or otherwise assert his First Amendment rights.[27]

The First Amendment protects the right to anonymous speech. *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, *3 (N.D. Cal. Nov. 9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)). That right is not absolute. *Id.* at *4. Some of the case law is in the context of discovery of the identity of Doe defendants. When third-party providers such as Twitter or Google receive subpoenas to produce identifying information of defendants like Mr. Roe, the court applies the appropriate First Amendment standard to ensure that a defendant's right to anonymous speech is protected. *See Music Group Macao Comm'l Offshore Limited v. Does*, No. 14-mc-80328-LB, 2015 WL 930249, at *2 (N.D. Cal. Mar. 2, 2015). In the context of lawsuits for alleged defamation on gripe sites, the situation necessarily implicates whether the allegations establish a claim at all because some speech is protected by the First Amendment. The analysis turns on what the speech is. *See In re Anonymous Online Speakers*, 661 F.3d 1168, 1174-77 (9th Cir. 2011) (the Ninth Circuit's review of the developing tests in the area of anonymous online speech). And the court routinely conditions the subpoena on notice to the consumer and an opportunity to be heard. *See, e.g.*, *UMG Recordings, Inc.*, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *3 (N.D. Cal. Jan. 31, 2006).

The main issue with the motion for a TRO is whether this is the forum to seek injunctive relief. A claim against Comcast for damages may be fair, but the request for an injunction is a collateral attack on a state-court order. As the intervenors argue, the state-court order precludes the plaintiff from relitigating the issue here.

---

[27] Memorandum – ECF No. 12 at 9.

ORDER – No. 17-cv-05966-LB        6

In California, "[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990) (en banc). California courts will apply collateral estoppel only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine. *See id.* at 1225–26. There are five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Id.* at 1225. "The party asserting collateral estoppel bears the burden of establishing these requirements." *Id.*

*In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001); *see Cooper v. Ramos*, 704 F.3d 772, 784 (9th Cir. 2012) (quoting the same factors). In its application of the five factors, the court considers the public policies underlying the doctrine, which are the preservation of the integrity of the legal system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation. *Lucido*, 51 Cal. 3d at 343.

Here, on this record, the court cannot conclude that the plaintiff made a clear showing that he is entitled to relief in the form of a TRO. *Winter*, 555 U.S. at 22. The issue was litigated and decided in state court. The Roe plaintiff's argument apparently is that the state trial court erred recently by not allowing him to appear pseudonymously to challenge the subpoena. But that does not change the conclusion that the state court decided the issue. The intervenors cite decisions that conclude that collateral estoppel precludes a party from re-litigating the issue of whether a subpoena was issued wrongfully.[28] The court follows those cases as persuasive.

## CONCLUSION

The court denies the motion for a TRO.

The issue then is, what are the next steps in this litigation. The court sets a status hearing for November 9, 2017, at 9:30 a.m., and directs the parties to confer on their proposed next steps and

---

[28] Intervenors' Opposition – ECF No. 14 at 2 (collecting cases).

ORDER – No. 17-cv-05966-LB 7

to file their proposal by Friday, November 3, 2017. That proposal must include a schedule for any further briefing or hearing regarding the court's ability to order injunctive relief, given the state rulings that apparently have preclusive effect.

This disposes of ECF No. 11.

**IT IS SO ORDERED.**

Dated: November 1, 2017

_____
LAUREL BEELER
United States Magistrate Judge